UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 05-CV-218-HRW

ROY McDANEL                                                                                           PLAINTIFF

VS:             **MEMORANDUM OPINION AND ORDER**

JOHN REES, ET AL.                                                                                 DEFENDANTS

Roy McDanel, the *pro se* plaintiff, has filed a *pro se* "Motion for Preliminary Injunction" [Record No. 1][1] and a "Motion to Appoint Counsel" [Record No. 5]. The plaintiff is confined at the the Eastern Kentucky Correctional Complex ("EKCC") in West Liberty, Kentucky. The Court will address the plaintiff's "Motion to proceed *in forma pauperis*" [Record No. 4] by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff.

---

[1] Th plaintiff's motion filed as Record No. 3 is an exact duplicate of the motion filed as Record No 1.

*See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (I) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The plaintiff alleges that for the past eight weeks, he and other inmates at the EKCC have been denied medical treatment for various conditions, in violation of the Eighth Amendment of the United States Constitution. He also challenges the conditions of his confinement, alleging that EKCC inmates have been deprived of basic human needs, such as clean water and clean air, for 72 hours. That claim also falls under the Eighth Amendment of the United States

The plaintiff further alleges that he suffers from epilepsy and receives inadequate medical care from the prison staff. He complains that the EKCC staff forces him to sleep on an upper bunk, and that during an epileptic seizure he fell off the bunk and injured himself. He alleges that numerous other actions by the EKCC staff, as far back as 2001, have violated the Eighth Amendment.

## RELIEF REQUESTED

The plaintiff seeks immediate injunctive relief in the form of an order requiring the Kentucky Department of Corrections ("KDOC") to provide him with proper health care, at its expense.

## NAMED DEFENDANTS

The named defendants are: (1) John Rees, Commissioner of the KDOC; and (2) John Motley, Warden of the EKCC.

2

## ALLEGATIONS OF THE MOTIONS
## SEEKING PRELIMINARY INJUNCTION

The plaintiff filed a seven-page Memorandum of Law in support of his "Motion for Preliminary Injunction." In that memorandum, he states that since 2001, the staff at the EKCC has denied him proper medical treatment in connection with back problems. He alleges, at some point between 2001 and 2003, that a leg press exercise machine fell on him and crushed his legs. He alleges that the prison required him to walk up and down two flights of stairs without crutches. He alleges that he suffers from numerous other medical conditions, including but not limited to nerve damage, weight problems, toenail fungus, degenerative disc disease, ulcers, stomach ailments, headaches, constipation, whiplash, and depression. He alleges that prison staff has not provided him with appropriate medical care for any of these conditions, and that he is in imminent threat of physical injury or damage because of that failure.

The plaintiff alleges, while incarcerated at the EKCC in 2001, that he was brutally assaulted by a staff member while another staff member laughed. He claims that his attempts to file charges and grievances about that incident were ignored and unanswered. He alleges not only that EKCC medical staff determined that he had inflicted his injuries upon himself, but that he was also subjected to disciplinary sanctions and placed in segregation. He states that he was removed from the EKCC and placed in the Luther Luckett Correctional Complex in November 2003. He states that a year-and-a-half later he was transferred back to the EKCC. He alleges that he did not want to be transferred back to the EKCC for fear of retaliation from the EKCC staff.

He alleges that on July 4, 2005, he experienced more back pain and trauma and that the EKCC staff failed to render proper medical care. He alleges that not long after that episode, he

3

suffered from severe abdominal pain, which he states the medical staff failed to properly treat.

He alleges that despite suffering from Grand Mal epileptic seizures, prison staff at EKCC have required him to sleep in a top bunk bed and that as a result of a seizure, he fell out of the top bunk and sustained head, neck, and back injuries. He states that he received a disciplinary report for trying to sleep in a lower bunk. He contends that to the extent he is required to occupy a top bunk bed, he is being subjected to the threat of ongoing physical harm.

Finally, he states that for a three-day period two or three times a year, EKCC inmates are without access to water in the living units due to boil-water advisories. Plaintiff further alleges that the EKCC has poor air systems and that the ventilation is bad because the filters are rarely, if ever, changed. He states that at some unspecified time, "duct work and vents had to be cleaned" [Mem. P. 4, Record No.1]. He claims that the poor air quality aggravates his breathing problems.

## DISCUSSION
### 1. Legal Standards For Preliminary Injunction

The plaintiff alleges that he is entitled to immediate injunctive relief in the form of an order directing the KDOC to provide him with proper medical care and affording him more preferable conditions of confinement, such as top bunk. He therefore asks the Court to enter a preliminary injunction awarding him with the requested relief. Where a party seeks a *preliminary* injunction, the Court must consider the following factors:

(1) whether the movant has a "strong" likelihood of success on the merits;

(2) whether the movant would otherwise suffer irreparable injury;

(3) whether issuance of a preliminary injunction would cause substantial harm to others; and

4

(4) whether the public interest would be served by issuing a preliminary injunction. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995)).[2]

The Sixth Circuit has held that while these four factors are not prerequisites which must all be met, they are considerations which should be balanced. *In re DeLorean Motor Company*, 755 F.2d 1223, 1229 (6th Cir. 1985). "The four factors . . . may not be weighed mechanically in order to determine if the injunction should be issued. No single factor is determinative but rather, the Court should weigh each of the factors in light of the factual circumstances of the particular case." *Columbia Gas v. Exclusive Natural Gas*, 688 F. Supp. 1245, 1248 (N. D. Ohio 1988) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-38 (6th Cir. 1978), *cert. granted* 440 U.S. 944 (1979), *cert. dismissed* 442 U.S. 925 (1979). The decision to grant or deny a preliminary or permanent injunction is within the district court's sound discretion. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1991); *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994).

2. <u>Application of Factor No. 1 to Facts</u>

Considering these factors in relation to the facts presented herein, the Court finds that the plaintiff's request for emergency relief is unwarranted. As to factor (1), there are three reasons the plaintiff has not demonstrated a "strong" likelihood of success on the merits. First, his Eighth Amendment claims relating to use of excessive force and/or denied medical treatment between 2001

---

[2] Where the plaintiff establishes a constitutional violation after a trial on the merits, the plaintiff will be entitled to *permanent* injunctive relief upon showing: (1) a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law. *See Dayton Christian Sch., Inc. v. Ohio Civil Rights Comm'n*, 766 F.2d 932, 961 (6th Cir. 1985) (quoting *Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982), *cert. denied*, 460 U.S. 1083, 103 S. Ct. 1773, 76 L.Ed.2d 346 (1983)); *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07, 79 S. Ct. 948, 954-55, 3 L.Ed.2d 988 (1959).

5

and 2003 are completely time-barred. Kentucky's one-year statute of limitations applies to civil rights claims arising in Kentucky. *See* Ky. Rev. Stat. Ann. §413.140(1)(a); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990). The plaintiff did not raise these claims until he filed the instant complaint, on November 18, 2005.

A district court may *sua sponte* raise the statute of limitations defense in a suit where statute of limitations defect was obvious from face of complaint. 28 U.S.C.A. §1915(e)(2). "A complaint does not present a rational basis in law if it is time-barred by the appropriate statute of limitations. When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir.1995); *Paige v. Pandya*, 238 F.3d 423, 2000 WL 1828653 **1(6th Cir.(Mich.)) (Unpublished Disposition); *Alston v. Tennessee Dept. of Corrections*, 28 Fed. Appx. 475, 2002 WL 123688 (6th Cir.(Tenn.)). The plaintiff's alleged Eighth Amendment claims from 2001 and 2003 must therefore be dismissed, with prejudice.

Second, in all instances the plaintiff described, it appears that he was not satisfied with the adequacy of the medical solutions offered to him. It is not that the plaintiff was not offered medical care so much as it is that the plaintiff did not prefer the kind of medical services that were offered. When a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."

6

*Estelle*, 429 U.S. at 106.[3]

The third reason the plaintiff's success on the merits is unlikely is because he has failed to demonstrate that he administratively exhausted any of his recent Eighth Amendment claims (from July 4, 2005 through October 8, 2005). He clearly states in his submission that since as far back as 2001, he has questioned the EKCC's ability and/or willingness to provide: (1) adequate medical care and (2) adequate conditions of confinement.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other incident to prison life, such as excessive force, to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S. Ct. 983 (2002); *Lavista v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999). Under federal law, it is insufficient for a prisoner to merely claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it.

Mere allegations of compliance with grievance procedures, unsupported by documentary proof, are inadequate to demonstrate efforts or attempts to comply with the administrative remedy process. Prisoners may not short-circuit the exhaustion requirement by alleging the futility of going further, and then ask the courts to rule they have done enough. *See McRae v. Corrections Corp. of America*, 208 F.3d 214, 2000 WL 302772 (6th Cir. March 27, 2000); *Fisher v. Wickstrom*, 230 F.3d

---

[3] There are numerous unpublished Sixth Circuit opinions which adopt *Westlake v. Lucas*' holding that where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which would sound in state tort law. *See Wilson v. Wilkinson*, 62 Fed. Appx. 590, 2003 WL 1795812 (6th Cir. (Ohio) April 1, 2003) (Not selected for publication in the Federal Reporter); *Wooley v. Campbell*, 63 Fed. Appx. 789, 2003 WL 1795708 (6th Cir. (Tenn.) March 27, 2003); *Wright v. Sapp*, 59 Fed. Appx. 799, 2003 WL 1465184 (6th Cir. (Ky.) March 17, 2003); and *Simpson v. Ameji*, 2003 WL 236520 (6th Cir. (Ky.) January 30, 2003).

7

1358, 2000 WL 1477232 (6th Cir. Sept. 25, 2000); and *Mentecki v. Corrections Corp. of America*, 2000 WL 1648127 (6th Cir. Oct. 27, 2000).

The plaintiff alleges generally that he and other inmates have unsuccessfully "reported their injuries to Defendants in the form of grievances and appeals, affidavits placing the Defendants on notice of the harm caused," [Mem. p. 5, Record No. 1]. That allegation, however, does not provide the Court with any specifics about the grievances; when they were filed; with whom; about what the subject matter concerned; what the official responses were; and at what administrative levels the grievances were filed. The plaintiff did not attach any copies of these alleged grievances.

Even if the plaintiff had produced grievances which *other* inmates had filed, that would still be inadequate. The plaintiff was required to file an administrative grievance for each and every claim which he asserts on his own behalf, including both complaints about medical treatment and the conditions of his confinement (top bunk bed).[4] In a handwritten letter to the Court dated November 16, 2005, the plaintiff states that he filed a grievance "on our medical doctor." [Record No. 3, Letter Attachment] He states that the doctor responded with "derogatory suggestive remarks of me needing mental health" [*Id.*]. The plaintiff states that he has a copy of the grievance, yet he did not provide it to the Court. He does not allege that he followed any of the subsequent

---

[4] The Kentucky Department of Corrections promulgated a set of administrative regulations at 501 KAR 6:010, which govern prison grievance procedures. They are referred to as "Corrections Policies and Procedures" ("CPP"). The CPP which addresses inmate grievances is found in Policy Number 14.6. According to the provisions of the *Inmate Grievance Process*, §I (1) of CPP Policy Number 14.6, a prisoner at a state correctional institution must informally attempt to grieve a claim with the Grievance Aide, the Grievance Coordinator, the department head or institutional staff. If the attempt at informal resolution fails, he must seek a hearing before the Grievance Committee [*Id.*, §(2)]. The Committee's decision must be forwarded to the warden, who is responsible for making a final written decision [*Id.*, §2(c)-(d)]. A prisoner who is not satisfied with the warden's final decision may appeal that decision to the Commissioner of Corrections by using a specific form described in §3(a) of the *Inmate Grievance Process*.

8

administrative remedies set forth in CPP 14.6 with regard to either his medical claims or his complaints about being placed in a top-level bunk bed.

For any issue a prisoner intends to raise, he must explain or demonstrate his attempts at exhaustion before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999). In *Wyatt*, the court concluded that the plaintiff had adequately shown that he had attempted to comply with administrative remedies, because he had attached numerous letters he had filed and other persuasive documents. In contrast, the instant plaintiff's efforts to exhaust his claims fall far short of the prisoners effort's described in *Wyatt*.

### 2. Application of Factors No. 2- 4 to Facts

As to factor (2), whether the plaintiff would suffer irreparable injury, the plaintiff cannot demonstrate that he would suffer irreparable injury if temporary emergency relief is denied. The plaintiff states on page one of his motion that "for more than 8 weeks, defendants have denied plaintiff and other inmates with disability medical and basic human needs..." [Record No. 1, page 1]. Absent any documented attempt at administrative exhaustion, it is not reasonable for the plaintiff to request the issuance of a preliminary injunction--a drastic remedy--to cure a situation he claims has existed for two months and has had concerns about for over four years. As stated, the plaintiff made no attempt to exhaust any of his recent Eighth Amendment claims which he states have been ongoing for eight weeks. He therefore cannot establish that he will suffer *irreparable* injury, which is the standard.

As to factor (3), the Court finds nothing to suggest that the public or others would be harmed by failing to take emergency action at this time. As to factor (4), the courts are ever cautioned to stay

9

out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The plaintiff's request for emergency injunctive relief is denied, as is his request for the appointment of counsel.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The plaintiff's claims against the defendants arising between July 4, 2004 and October 8, 2005 are **DISMISSED WITHOUT PREJUDICE**.

(2) The plaintiff's claims against the defendants which arose between 2001 and 2003 are **DISMISSED WITH PREJUDICE**.

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

(4) The plaintiff's "Motions for Preliminary Injunction" [Record Nos. 1 and 3] and "Motion for Appointment of Counsel [Record No. 5] are **DENIED**.

This __3__ day of ~~December~~ Jan., 2005.

HENRY R. WILHOIT, JR.
SENIOR U. S. DISTRICT JUDGE